UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LONNIE DUGAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>FRANKLIN COUNTY; RICHARD LATHIM, Franklin County Sheriff, in his individual and official capacity; RICK LONG, Captain, Franklin County Jail, in his individual and official capacity; ILLENE ALEXANDER, Nurse, Franklin County Jail, in her individual and official capacity; CONNIE RODE, Nurse, Franklin County Jail, in her individual and official capacity,<br><br>Defendants. | Case No. 4:14-CV-5119-LRS<br><br>ORDER GRANTING DEFENDANTS ALEXANDER AND RODE'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART COUNTY DEFENDANTS MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are two separate motions for summary judgment: the Motion for Summary Judgment (ECF No. 23) filed by Defendants Franklin County, Richard Lathim, and Rick Long (collectively the "Jail Defendants"); and the Motion for Summary Judgment (ECF No. 26) filed by Defendants Illene Alexander and Connie Rode (the "Nurse Defendants"). Plaintiff's claims generally allege that

ORDER – 1

during a four-day period in 2011, the Jail Defendants' deficient policies regarding inmate health care and the Nurse Defendants' deliberate indifference led to the improper management of his diabetes, an inadequate response to a medical emergency, and ultimately to his hospitalization.  The Court has carefully considered the Motions, supporting and opposing memoranda and evidence.  For the reasons explained below, Defendants' Motions are **GRANTED** as set forth herein.

## I. FACTS[1]
## A. Franklin County Jail's Arrangement for Medical Services

Defendant Franklin County is a public entity and political subdivision of the State of Washington.  The County operates the Franklin County Jail in Pasco,

---

[1]    Although the Defendants have filed separate motions for summary judgment, Plaintiff has filed a single Statement of Facts "in support of their Response" (ECF No. 34 at 2) and Defendants Franklin County, Lathim and Long have adopted the statement of undisputed facts set forth in their Co-Defendants' Reply.  (ECF No. 14 at 3).  To the extent Plaintiff's submission does not challenge Defendants' statements of material fact, *see L.R. 56.1(b)*(setting forth prescribed format), and Defendants' Reply does not challenge Plaintiff's facts, *see* L.R. 56.1(c)(requiring a party to "explicitly identify" any fact(s) which the moving party "disputes or clarifies"), the Court deems these uncontested facts undisputed with regards to the instant summary judgments.  To the extent that the motions are based on the same record, the Court will address them simultaneously.

ORDER – 2

Washington.  At all times relevant herein, Defendant Sheriff Richard Lathim had

ultimate authority and responsibility for the jail facilities. Defendant Rick Long was

a Captain in the Corrections Division of the Franklin County Sheriff's Departments

and was responsible for oversight of the Franklin County Jail, including directing

the activities of subordinate officers and other correctional facility employees.  (ECF

No. 14 at 4).

The County contracts for the provision of medical services at the Franklin

County Jail.  During the relevant period, medical care was provided by Ryan Medical

Services through David Ryan, D.O. and his two employees, Illene Alexander, R.N.

and Connie Rode, R.N.  Lathim and the Franklin County Commissioners executed

a contract with Dr. Ryan obligating him to provide medical services seven days a

week and have available staff on a 24-hour basis for immediate consultation.   (ECF

No. 25 at 12-13).

Although blood sugar tests were sometimes documented by corrections staff,

medication and injections were administered to diabetic inmates by the nursing staff,

although most inmates would choose to do their own injections.  (ECF No. 33 at

126). Dr. Ryan had instructed his staff to administer insulin according to a sliding

scale.  Although the precise scale used is in dispute, Dr. Ryan testified at his

deposition that it was his policy that a blood sugar reading above 350 should receive

ORDER – 3

15 units of regular insulin (ECF No. 33 at 129) and anything above a 300 was considered a "high reading," in his opinion.  (ECF No. 33 at 129-130).

**B. Plaintiff's Confinement and Treatment**

In December 2011, Lonnie Dugan was a 40-year old type 1 insulin-dependent diabetic serving a 40-day sentence for driving under the influence.  He began serving his sentence at the Benton County Jail in Kennewick, Washington where during his stay from December 18 through December 21, 2011, he had received a long lasting insulin (Levemir at 20 to 25 units) two times a day and regular, short acting insulin (Novolog) with meals.  While there, Plaintiff's blood sugars varied from 79 up to 281.  (ECF No. 33 at 90).

In the morning of December 22, 2011 at 0700 hours, Plaintiff was transferred to and booked into Franklin County Jail.  As part of the booking process and within an hour of arrival at the Franklin County Jail, Plaintiff informed the screening corrections he was an insulin-dependent diabetic.  Nurse Rode performed a medical screening at 1403 hours and noted that Plaintiff had arrived with insulin.  Rode consulted with Dr. Ryan and obtained verbal orders for the administration of insulin.  Although there is no written documentation of Dr. Ryan's orders, Rode placed on a diabetic diet and directed that his blood sugars be tested twice a day, which was the standard practice at the jail.  (ECF No. 33 at 24, 42).

ORDER – 4

The summary judgment record reflects the following blood sugar tests and insulin dispensed and Plaintiff's contentions:

| Date | Time | Blood Sugar | Screener | Insulin Dispensed | *Insulin Plaintiff *claims* he should have received |
|------|------|-------------|----------|-------------------|-----------------------------------------------------|
| **December 22, 2011** | | | | | |
| 12/22 | 1645 | 401 | Corrections Officer | None. | 15 units of regular insulin |
| 12/22 | 2040 | 454 | ALEXANDER | 5 units regular insulin | 15 units of regular insulin |
| **December 23, 2011** | | | | | |
| 12/23 | 0410 | 375 | Corrections Officer | None | 15 units of regular insulin |
| 12/23 | 0815 | 329 | | Blood test results ordered by Dr. Ryan | |
| 12/23 | 1149 | 380 | RODE | 10 units *regular* insulin | 15 units of regular insulin |
| 12/23 | 1630 | 391 | | 15 units *long acting* insulin (Lantus) | 15 units of regular insulin |
| **December 24, 2011** | | | | | |
| 12/24 | 0410 | 422 | | None. | 15 units of regular insulin |
| 12/24 | 0735 | 435 | ALEXANDER | 5 units of *regular* insulin | 15 units of regular insulin |
| 12/24 | 1630 | 574 | ALEXANDER | 15 units of *long acting* insulin (Lantus) | 15 units of regular insulin |
| **December 25, 2011** | | | | | |
| 12/25 | 0435 | "HI" (600+) | Corrections Officer | No log | 15 units of regular insulin |
| 12/25 | 0600 | "HI" (600+) | ALEXANDER | 20 units of *long acting* insulin (Lantus); 10 units of *regular* insulin | |
| 12/25 | 0715 | "HI" (600+) | ALEXANDER | 10 units of *regular* insulin | |
| 12/25 | 1200 | "HI" (600+) | ALEXANDER | 10 units of *regular* insulin | |

On the day of Plaintiff's arrival at Franklin County Plaintiff did not receive any long acting insulin and received insulin once in the evening when he was checked for the first time by Nurse Alexander. According to Plaintiff, when he asserted his need for insulin and showed Alexander a court order, he claims

ORDER – 5

Alexander told him that the judge "don't run nothing in here," that "she runs it the way she runs it."; that "300 blood sugar" is common in jail and that he should go back to his cell "and do some pushups and walk around."   (ECF No. 33 at 28-29). Alexander denies that an argument occurred.  Alexander claims she dispensed 5 units because Plaintiff had just eaten, she did not have a fasting blood sugar reading, and she did not want him to have low blood sugar overnight.  (ECF No. 25 at 26; ECF No. 39 at 3).

The next day, Thursday, December 23, 2011, Alexander ordered the jail not to give Plaintiff breakfast (two hour restriction) until the nurse arrived in order to have a correct blood sugar reading.  Plaintiff did receive a long-acting insulin (though not the same brand he had been using). According to Alexander, Plaintiff was given Lantus because it was the medication ordered by Dr. Ryan and in stock. Plaintiff complained to Rode that he was feeling sick and losing weight.  After taking his blood sugar, Rode contacted Dr. Ryan.  That evening, Plaintiff claims he vomited after he ate his dinner and he was moved to the "medical ward" by corrections staff.

On Saturday, December 24, 2011, Plaintiff's girlfriend Dora Rivera visited and thought Plaintiff looked like he had lost weight, was "sunken in," gray, hunched over, and had labored breathing. He showed her his log he was keeping of interactions with medical staff.  Concerned he was not receiving the insulin he had

ORDER – 6

been previously prescribed, she talked with Alexander, attempted to contact the jail sergeant, and emailed the county commissioners, coroner and sheriff.

Nurse Alexander's observation note from December 24 reflected that during his stay Plaintiff had "refused food, he did not eat his meals, saved his food, ate food before his blood sugar checks, did not inject insulin correctly, and he did not take his insulin the evening of 12/24/2011." (ECF No. 40, Ex. C at 62).

Around 4:30 a.m. on Sunday, December 25, 2011, Alexander was notified by Corporal Cram of a "HI" reading on the glucometer. Although scheduled to be her day off, she was concerned and told staff to move him to a medical area and not to give him breakfast or lunch, until she arrived to monitor him. Plaintiff complained of nausea and vomiting. Alexander consulted with Dr. Ryan who instructed Alexander to monitor and hospitalize if the blood sugar reading did not go down. After the third insulin dose without food, in a six-hour period, which Alexander believed should have brought him down, the decision was made to direct his hospitalization. Alexander did not direct Plaintiff's transport by ambulance. He had been able provide a urine sample before he left, he was standing, reading, and signing the paperwork to be released to his family. (ECF No. 33 at 53-54, 62).

A Franklin County corrections officer conferred with the sergeant and determined that Plaintiff should be medically released. (ECF No. 14 at 9). Jail staff called Rivera to come pick up Dugan from the jail and released Plaintiff on his own

ORDER – 7

recognizance at 1339.    When Rivera arrived, Plaintiff was unattended on the sidewalk of the jail.    Rivera claims he was "limp and rambling incoherently" and had to be "carried to the car by his sons."    She transported Plaintiff to Lourdes Medical Center (approximately one block away) where he was admitted at 1400 hours. The admitting physician upon physical examination noted he was "alert and oriented…and does not appear to be in any acute distress."  (ECF No. 25 at 52).

At the hospital, Plaintiff's blood sugar was 895.  He was diagnosed with moderate diabetic ketoacidosis ("most likely secondary to ineffective insulin dosage") and acute renal failure, leukocytosis, and hyponatremia.   (ECF No. 25 at 52). He was discharged on December 28, 2016. It is undenied that he had no permanent injury or damage as a result of his diabetic ketoacidosis.  *See contentions at* ECF No. 24 at 6 (Jail Defendants SOF); ECF No. 27 at 7 (Nurse Defendants SOF); ECF No. 34 (Plaintiff's SOF). He claims that after his hospitalization he walked with a walker for a week, was weak, and had a "frozen shoulder."

It is Plaintiff's medical experts' opinions that Plaintiff should have received more insulin than he received. Plaintiff's expert opines that had Plaintiff received "his long-acting insulin," it would have prevented ketoacidosis, however, he acknowledges that if the Plaintiff did not inject the insulin he was given, he could put himself into ketoacidosis. (ECF No. 33 at 96).

ORDER – 8

Dr. Ryan testified in his deposition that he had repeatedly asked Captain Long for more funding to provide more hours to the jail. Plaintiff asserts Franklin County did not have policies regarding the care of insulin dependent diabetics at the jail.

Plaintiff filed his Complaint on December 5, 2014 alleging the deliberate indifference to his serious medical needs in dosing his insulin. (ECF No. 1). Section V of the Plaintiff's Complaint asserts the following "Causes of Action": (1) "cruel and unusual punishment" under the Eighth and Fourteenth Amendments; (2) "Violation of Due Process"; (3) "Violation of Civil Rights" under 42 U.S.C. § 1983; (4) "failure to perform duty imposed by Washington state law"; (5) "negligence/recklessness"; (6) outrage; (7) "negligent and gross negligent hiring, training, and supervision of employees and agents"; and (8) respondeat superior. (ECF No. 1). Defendants' Motions seek the dismissal of all claims.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotations and citations omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 586 n. 11.

## III. NURSE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their Motion for Summary Judgment, the Nurse Defendants argue that Plaintiff has failed to demonstrate a constitutional violation, and as such, there can be no liability under 42 U.S.C. s. 1983. Plaintiff asks the Court to dismiss "this case with prejudice as only state law claims remain." (ECF No. 39 at 12).

### A. Section 1983

ORDER – 10

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009), *cert. denied*, 559 U.S. 1025 (2010).

**B. Eighth Amendment**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs.*" Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104, (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk

ORDER – 11

to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo County Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, *Jett*, 439 F.3d at 1096.

In general, a prisoner evinces deliberate indifference by showing that prison officials denied, delayed, or intentionally interfered with medical treatment, or the prisoner points out the deficient way in which prison officials provided medical care. *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988). However, in applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (*citing Estelle*, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish

ORDER – 12

deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

There can be little doubt that the Plaintiff presented a serious medical need, and none of the Defendants have argued otherwise for purposes of their Motion. Instead, the Nurse Defendants contend that there is insufficient evidence in the summary judgment record of deliberate indifference.  Plaintiff contends there are material issues of fact as to "why the nurse did not continue to use the insulin medications that came with Mr. Dugan from Benton County" and his contention that "every time his blood sugars were checked, he was not given the proper dosage of insulin." (ECF No. 36 at 14-15).   Plaintiff's claims regarding the frequency of his blood sugar checks, the timing and dosage of his insulin treatments, and the type of insulin prescribed are disagreements about the adequacy of treatment measures.  The record does not demonstrate that Nurse Rode or Nurse Alexander acted with the requisite subjective intent required to raise to the constitutionally inadequate level of deliberate indifference. It is undisputed that Plaintiff was placed on the proper diabetic diet, the nurses monitored his blood sugar level on a daily basis, they consulted with Dr. Ryan, and they administered and adjusted the insulin dose.  It is further undisputed that Alexander responded quickly when Plaintiff's high blood

ORDER – 13

sugar readings continued to register high, despite insulin treatments.  Contentions like Plaintiff's amount to a disagreement with the quality or extent of medical treatment, or even negligence, do not give rise to § 1983 claim.  *See e.g., Harris v. Donaldson*, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995)(unpublished) (no deliberate indifference where prisoner received medical treatment for diabetes, including blood sugar level monitoring, insulin doses and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for diabetes).  The Nurse Defendants have met their burden in their Motion for Summary Judgment and the evidence, viewed in the light most favorable to the Plaintiff, establishes they acted within the bounds of the Eighth Amendment.  Defendants' Motion for Summary Judgment is granted as to the deliberate indifference claim against the Nurse Defendants.

## C. State Law Claims

The Nurse Defendants request "this case be dismissed with prejudice as only state law claims remain" against them. (ECF No. 39 at 12). Federal law provides that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  As the statute of limitations on Plaintiff's state claims are "tolled while the claim is pending and for a period of 30 days after it is dismissed,"

ORDER – 14

28 U.S.C. § 1367(d), this Court discerns no unfairness in declining to decide his state claims.  Judicial economy, convenience, and fairness to the parties do not provide an affirmative justification in this case beyond any other case, therefore the Court declines to exercise supplemental jurisdiction and the state claims will be dismissed without prejudice.

**IV. JAIL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A. Due Process Claim**

Plaintiff's Third Cause of Action in the Complaint asserts a claim against the Defendants for "arbitrary and capricious conduct in violation of plaintiff's due process rights under the Constitution..." (ECF No. 1 at 11).  The Jail Defendants argue that any Fourteenth Amendment due process clause violation is duplicative of Plaintiff's Eighth Amendment claim.  (ECF No. 23 at 12).  Generally, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff's Response does not even refer to any due process claim, thus the Court concludes the factual bases must be the same or alternatively, Plaintiff has abandoned this claim.  Plaintiff's due process claim is subject to dismissal on these grounds.

ORDER – 15

**A. Deliberate Indifference**

**1. Supervisory Liability against Defendants Lathim and Long in their *Individual* Capacities**

For a defendant to be held liable under § 1983, the plaintiff must demonstrate that the defendant personally participated in the alleged denial of rights. In other words, there can be no liability under § 1983 based on respondeat superior or other theory of vicarious liability. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 663 n. 7 (1978); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Liability under § 1983 attaches upon personal participation by a defendant in the constitutional violation. *Taylor v. List*, 880 F.3d 1040, 1045 (9th Cir. 1989). "A supervisor can be liable in his individual capacity 'for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation...; or for conduct that showed a reckless or callous indifference to the rights of others.' " *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal quotations, citations and corrections omitted).  Additionally, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

ORDER – 16

There is an overall ambiguity in the allegations as to the conduct of Lathim and Long, as Plaintiff has failed to plead any specific factual allegations against either Defendant as to what they knew and what each Defendant did. Plaintiff's Response contends Lathim and Long were deliberately indifferent to the risk that current policies and training were inadequate and specifically contends the following conduct "showed a deliberate indifference to the inmates constitutional rights":

1) Long failed to grant Dr. Ryan's request for additional compensation to provide more hours for medical staff at the jail and for "additional medical equipment";
2) Lathim and Long "failed to relay any policies or procedures to Dr. Ryan";
3) Lathim and Long failed to "train officers in the care of insulin dependent inmates";
4) Lathim and Long failed to establish "a policy in regard to evaluating the medical staff";
5) Lathim "failed to promulgate any policy regarding the release of an inmate for medical purposes."

ECF No. 35 at 12-13.

Plaintiff fails to furnish the evidence of a causal connection between these Defendants alleged omissions and Plaintiff's alleged injury. This case is distinguishable from *Redman* in that Plaintiff hasn't the evidence suggesting Defendants' acquiescence in the face of knowledge of inadequacies in the jail's health care system regarding the management of diabetes. Although Plaintiff claims his girlfriend sent emails to Lathim and other county employees informing them that Mr. Dugan was not receiving his insulin (ECF No. 34 at 7), non-medical defendants cannot "be considered deliberately indifferent simply because they failed to respond

ORDER – 17

directly to the medical complaints of a prisoner who was already being treated by the prison doctor" and if "a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir.2004); *see also Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir.2005) (holding that "[o]nce a [non-medical] prison grievance examiner becomes aware of potential mistreatment, the Eight Amendment does not require him or her to do more than 'review [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment.").

### 2. Claims against Defendants Lathim and Long in their *Official Capacities*

Claims against an individual in his official capacity are the functional equivalent of a suit against the entity of which he is an agent. *Kentucky v. Graham*, 473 U.S. 159 (1985). Thus, the § 1983 official capacity claims against Lathim and Long are duplicative of those against Franklin County and are hereby dismissed as redundant. *See Center for Bio–Ethical Reform, Inc. v. Los Angeles Cnty Sheriff Dep*t., 533 F.3d 780, 799 (9th Cir. 2008) (Sheriff sued in "official capacity" is a redundant defendant and should be dismissed when county is also named).

### 3. Municipal Liability against Franklin County

Local governments such as the County may be sued directly under § 1983. *Monell v. Dep't Soc. Servs. of N.Y.C.*, 436 U.S. 658, 689 (1978). A plaintiff can

ORDER – 18

establish local government liability in one of the following three ways. "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (*citing Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989); *Monell*, 436 U.S. at 690-91). "Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy." *Id. (citing Pembuar v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *McKinley v. City of Eloy*, 705 F.2d 1110, 1116 (9th Cir. 1983)). State law determines whether a particular official has final policy-making authority. *Id*. "Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id. (citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1988); *Hammond v. Cnty. of Madera*, 859 F.2d 797, 801-02 (9th Cir. 1988)).

Though not clear by the allegations in the Complaint, Plaintiff argues he has alleged the County's liability through the first and second of the three above methods.  As previously discussed, Plaintiff lacks evidence Defendants Lathim or Long were deliberately indifferent to Plaintiff's serious medical needs.  The customs

ORDER – 19

or policies identified by Plaintiff in his Response are policies of "systematically understaffing" on-site medical staff (able to dispense insulin) and failing to train "officers in administering medical care" and "to recognize when a diabetic needed insulin and how to administer it properly." (ECF No. 35 at 17). Problematically, Plaintiff's discussion of the alleged County polices fails to cite a single piece of record evidence in support of his claims. (ECF No. 35 at 17-18). Plaintiff has offered no evidence either establishing that a custom or policy existed in Franklin County with respect to "understaffing" at the jail or regarding the training or lack thereof. Plaintiff does not offer, for example, any expert opinion regarding alleged failed policies of the County. Even if Plaintiff had set forth the evidentiary record that could establish that a custom or policy existed, he lacks evidence the County's action was taken with the requisite degree of culpability and with deliberate indifference to its known or obvious consequences. Without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. *See e.g.*, *Clement v. Gomez*, 298 F.3d 898 (9th Cir. 2002). Again, the Court finds municipal liability cannot attach in this case on Plaintiff's § 1983 claim of municipal liability.

### E. State Law Claims

Plaintiff's Complaint also alleges state law claims of negligence (count 5); outrage (count 6); and against Franklin County, negligent hiring, training and

supervision of employees and agents (count 7).  The Jail Defendants have motioned for dismissal of the negligence claim on the merits due to lack of evidence of breach or causation. (ECF No. 23 at 22-24).

The Court's subject-matter jurisdiction in this action is premised on the existence of a federal claim—namely, the deliberate-indifference claim.  In this case, the Court has already dismissed all claims over which it had original jurisdiction, and judicial economy, fairness and convenience do not require this Court to retain supplemental jurisdiction under 28 U.S.C. § 1367. *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). The Court declines jurisdiction with some hesitancy and is mindful that Defendants' request comes late in the proceedings in this lawsuit. However, the remaining claims are brought by a Washington resident and relate to alleged professional negligence of Washington nurses and corrections staff. The state court generally handles such cases and has substantial expertise in such cases. Any such proceeding would make full use of the pretrial discovery and preparation the parties have accomplished to date.  The Court also notes 28 U.S.C. s. 1367(d) tolls the statute of limitations while the claim is pending in this Court "and for a period of 30 days after the dismissal unless state law provides a longer period." The Court will dismiss the state law claims without prejudice for said claims to be re-filed in state court.

**V. CONCLUSION**

ORDER – 21

**IT IS HEREBY ORDERED**:

1.  Defendants Alexander and Rode's Motion for Summary Judgment (**ECF No. 26**) is **GRANTED.**

2.  Defendants Franklin County, Lathim and Long's Motion for Summary Judgment (**ECF No. 23**) is **GRANTED IN PART**.

3.  Plaintiff's federal claims are DISMISSED with prejudice.  The Court declines supplemental jurisdiction over Plaintiff's remaining state law claims and they are hereby **DISMISSED WITHOUT PREJUDICE**.

The Clerk of the Court shall enter Judgment reflecting the above Order of the Court, provide copies of this Order and the Judgment to counsel, and CLOSE THE CASE.

**DATED** this 23rd day of March, 2016.

*s/Lonny R. Suko*

_____

LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE

ORDER – 22